UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN FARINA,

                Plaintiff,

           -v-                                                               8:24-CV-395 (AJB/DJS)

UNITED STATES OF AMERICA,

                Defendant.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.    INTRODUCTION

On March 20, 2024, *pro se* plaintiff John Farina ("plaintiff") filed this action alleging that an agent employed by the United States Department of Homeland Security ("DHS") violated his civil rights under 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA") when she seized his wallet and improperly turned it over to an unauthorized, unknown person, which caused him to suffer from identity theft. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

The case was initially assigned to Senior U.S. District Judge David N. Hurd, who referred the file to U.S. Magistrate Judge Daniel J. Stewart for an initial review. Although Judge Stewart granted plaintiff's IFP Application, Dkt. No. 7, he recommended that plaintiff's initial complaint be dismissed with leave to amend. Dkt. No. 8. As Judge Stewart explained, plaintiff's 42 U.S.C. § 1983 claims failed because the named defendant was alleged to be a DHS agent who cannot be sued under the § 1983 statute. *Id*. As for plaintiff's FTCA claims, Judge Stewart explained that plaintiff's complaint did not plausibly allege that he had exhausted his administrative remedies

with respect to that claim. *Id*. After Judge Stewart's recommendation was adopted by Judge Hurd, Dkt. No. 9, plaintiff filed a first amended complaint, Dkt. No. 10.

There, plaintiff re-alleged that defendant United States of America ("defendant") violated his rights under the FTCA when a DHS agent seized his wallet and turned it over to an unknown person, causing him to suffer from identity theft. Dkt. No. 10. Again, however, Judge Stewart recommended that plaintiff's amended complaint be dismissed with leave to amend because, as before, the new pleading failed to plausibly allege that plaintiff had exhausted his administrative remedies before filing suit under the FTCA. Dkt. No. 11. After that recommendation was again adopted by Judge Hurd, Dkt. No. 13, plaintiff filed a second amended complaint, Dkt. No. 15.

There, plaintiff re-alleged his FTCA claim based on the loss of his wallet and its contents following his arrest. Dkt. No. 15. This time, Judge Stewart concluded that plaintiff had attached evidence to the complaint tending to show that he had filed an administrative tort claim (called a "Standard Form 95") before filing this FTCA action. Dkt. No. 16. Accordingly, Judge Stewart accepted plaintiff's second amended complaint for filing, ordered service on defendant, and set a deadline for defendant to respond to, or move against, the operative pleading. *Id*. Thereafter, the matter was reassigned to this Court for all further proceedings. Dkt. No. 27.

On June 11, 2025, defendant moved under Rule 12(b) of the Federal Rules of Civil Procedure seeking to dismiss plaintiff's second amended complaint because plaintiff failed to timely exhaust his administrative remedies.[1] Dkt. No. 45. The motion has been fully briefed, Dkt. Nos. 50, 51, and will be considered on the basis of the submissions without oral argument.

---

[1] In his opposition, plaintiff contends that defendant's motion to dismiss is untimely under the Federal Rules of Civil Procedure and the Local Rules. Dkt. No. 50 at 4. Plaintiff is incorrect. Courts may extend the response deadlines in appropriate circumstances, and in this case the assigned magistrate judge did so. Dkt. No. 44.

## II.  BACKGROUND

On March 24, 2021, a DHS agent took possession of plaintiff's wallet, which had been seized by New York State Police during his arrest.  Dkt. No. 15 ¶ 4.  Thereafter, plaintiff alleges that the DHS agent negligently delivered the wallet to an "unknown civilian who claimed said wallet without permission of plaintiff," "causing identity theft and loss of money associated with credit/debit cards enclosed in [the] wallet."  *Id*. ¶ 5.  As plaintiff explains, this wallet contained his birth certificate, social security card, state-issued identification card, and debit cards.  *Id*. ¶ 9.  According to plaintiff, the DHS agent's "negligent decisions" caused him to suffer "larceny" in the amounts of $850 on his Cash App debit card, $2,400 on his two Lilly debit cards, and $7,100 on his Direct Express debit card.  *Id*. ¶ 10.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  FED. R. CIV. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Id*.

Rule 12(b)(1) motions can be "facial" or "fact-based."  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).  A "facial" Rule 12(b)(1) motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it."  *Id*. at 56.  Under those circumstances, the plaintiff bears no evidentiary burden.  *Katz v. Donna Karan Co., L.L.C.*, 872

F.3d 114, 119 (2d Cir. 2017). Instead, the court must determine whether the complaint and its exhibits plausibly allege facts giving rise to subject-matter jurisdiction. *Carter*, 822 F.3d at 56.

In contrast, a "fact-based" Rule 12(b)(1) motion permits a defendant to proffer evidence outside of the pleading. *See Carter*, 822 F.3d at 57. In that scenario, the plaintiff will ordinarily need to come forward with evidence of their own to controvert the defendant's showing. *Id*. If the defendant identifies "material and controverted" extrinsic evidence, the court "will need to make findings of fact in aid of its decision." *Id*. However, "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject-matter jurisdiction]," the plaintiff may rely on their pleading. *Id*.

### B. Rule 12(b)(6)

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

IV.     **DISCUSSION**

As an initial matter, plaintiff is *pro se*. That means he is not represented by an attorney. Therefore, his pleadings and filings must be held to less stringent standards than those that might be drafted by a lawyer. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

Even so, plaintiff's second amended complaint must be dismissed. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). "In 1946, Congress enacted the Federal Tort Claims Act, which constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Liranzo v. United States*, 690 F.3d 78, 84–85 (2d Cir. 2012) (cleaned up).

As amended, the FTCA "allows a plaintiff to bring certain state-law tort suits against the Federal Government . . . for parties injured by federal employees acting within the scope of their employment." *Brownback v. King*, 592 U.S. 209, 210–11 (2021). Under the FTCA, the federal courts have jurisdiction over "actionable" claims, which must be:

> (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with state law where the act or omission occurred.

*See* 28 U.S.C. § 1346(b) (cleaned up).

Importantly, though, the FTCA's waiver of sovereign immunity is subject to a number of conditions, including that "a plaintiff must first file an administrative claim with the appropriate federal agency before suing for relief in federal court."  *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).  This is known as the "presentment requirement."  *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) (per curiam).  "This requirement is jurisdictional and cannot be waived."  *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

Defendant contends that plaintiff's complaint must be dismissed because plaintiff failed to exhaust his administrative remedies *before* he filed this FTCA action.  Dkt. No. 45-1 at 6.[2]  As defendant explains, the "appropriate federal agency"—in this case, the DHS—did not receive an "administrative claim" from plaintiff until September 26, 2024, "six months after the filing of his original Complaint in March 2024."  *Id*.; Litz Decl., Dkt. No. 45-2 ¶¶ 1–9 (defendant's proof).

In opposition to dismissal, plaintiff argues that he put DHS on written notice of his FTCA claim when he mailed to the agency the unsigned Standard Form 95 that is attached to his second amended complaint.  Dkt. No. 50 at 2.  Plaintiff explains that this "unsigned Form 95" is dated March 13, 2023, which is "a full week ahead of the [two-year] deadline" imposed by the FTCA's statute of limitations.  *Id*.  In plaintiff's view, the fact that DHS "failed to acknowledge the Form 95 on time has no bearing on the plaintiff and should not be held against him."  *Id*. at 3.

To adequately "present" an FTCA claim, the plaintiff must provide a written notice to the federal agency with "enough information to permit the agency to conduct an investigation and to estimate the claims' worth."  *Romulus*, 160 F.3d at 132.  The plaintiff must wait until the agency issues a final denial "in writing," 28 U.S.C. § 2675(a), after which time he has six months to file

---

[2]  Pagination corresponds to CM/ECF headers.

an action in federal court, 28 C.F.R. § 14.9. "The failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a).

Broadly construed, plaintiff's opposition indicates that he learned of the alleged harm at some point after his March 24, 2021 arrest, when he received a security alert on one of the debit cards. *See* Dkt. No. 50 at 2. This security alert prompted plaintiff to investigate, which revealed "the negligent actions of" the DHS agent. *Id*. Although this explanation leaves it less than fully clear about the *exact* date on which plaintiff allegedly mailed out to DHS the unsigned Standard Form 95 that is attached to his second amended complaint, the record indicates that it was most likely to have been on either March 12, 2023 (the date of a covering letter written by his counsel in the criminal case accompanied by a certified mail receipt) or, at the latest, March 13, 2023 (the date typed on the unsigned Standard Form 95 itself).

In light of plaintiff's *pro se* status, either of these March 2023 mailings would be timely for the purpose of the FTCA's statute of limitations, which requires that the claimant's written notice be presented to the appropriate agency "within two years after such claim accrues." 28 U.S.C. § 2401(b).[3] An FTCA claim accrues "on the date that a plaintiff discovers that he has been injured," *Valdez v. United States*, 518 F.3d 173, 177 (2d Cir. 2008), or when plaintiff "has or with reasonable diligence should have discovered the critical facts of both his injury and its cause," *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) (cleaned up).

Plaintiff's submissions establish that he learned of the alleged harm at some point after his March 24, 2021 arrest, which means that a valid administrative claim mailed in early March

---

[3] Unlike the "presentment requirement," discussed *infra*, the FTCA's limitations period is not jurisdictional and may be subject to equitable tolling in an appropriate case. *United States v. Wong*, 575 U.S. 402, 410–12 (2015); *see also Torres v. United States*, 612 F. App'x 37, 41 (2d Cir. 2015) (summary order) (holding dismissal of FTCA claim on time-bar "requires a dismissal on substantive, not jurisdictional, grounds").

2023 would fall within the FTCA's two-year limitations period. The problem for plaintiff is that neither of his March 2023 mailings, absent more, are enough to satisfy the FTCA's "presentment requirement," which is a related-but-distinct concept under the FTCA. *See Hickman v. Bellevue Hosp. Ctr.*, 2024 WL 2112127, at *5 (E.D.N.Y. Jan. 5, 2024) ("Though interrelated, the FTCA's presentment requirement and the FTCA's time limits are distinct."), *adopted by* 2024 WL 1756451 (E.D.N.Y. Apr. 24, 2024), *reconsideration denied*, 2024 WL 2158440 (May 14, 2024).

As defendant points out, the Second Circuit has held that the "mere mailing of a notice of claim does not satisfy the FCTA's presentment requirement." *Cooke v. United States*, 918 F.3d 77, 82 (2d Cir. 2019). Although proof of delivery might be enough to satisfy this requirement in an appropriate case, *see Shore v. United States*, 2024 WL 4350692, at *4–*5 (E.D.N.Y. Sept. 30, 2024), the Second Circuit has emphasized that "[t]he statute and corresponding regulation make clear that *actual receipt* is required." *Cooke*, 918 F.3d at 82 (emphasis added).

The evidence in the record shows that DHS did not receive plaintiff's unsigned Standard Form 95 until September 26, 2024. Litz Decl., Dkt. No. 45-2. This evidence further shows that the copy of the unsigned Standard Form 95 that DHS received was attached to plaintiff's second amended complaint. *Id*. ¶ 7. In other words, the record establishes that DHS did not receive the unsigned Standard Form 95 until six months *after* plaintiff filed this action on March 20, 2024.

Because there is nothing in this record sufficient to contradict defendant's evidentiary showing, plaintiff has failed to establish that he exhausted his administrative remedies before filing this FTCA action.[4] *See, e.g.*, *Mayes v. United States*, 790 F. App'x 338 (2d Cir. 2020)

---

[4] Elsewhere in the record (attached to plaintiff's first amended complaint) there is a U.S. Postal Service domestic return receipt addressed to "DHS" that bears a handwritten date of March 6, 2023. Dkt. No. 10 at 10. Although it seems hard to reconcile the timeline, plaintiff appears to claim that this mailing included the unsigned Standard Form 95 that is dated March 13, 2023. As defendant notes, this postcard has no printed name or date of delivery or any postal markings tending to show that it was processed through the facility where plaintiff was incarcerated at the time. Likewise, although plaintiff's attorney's March 12, 2023 covering letter includes a certified mail receipt, Dkt. No. 50 at 8, this certifies that the mail was sent, not that the mail was received.

(summary order) (affirming dismissal of FTCA claim where written notice filed after lawsuit was initiated); *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011) (dismissing a "prematurely filed FTCA claim[ ]"). Accordingly, plaintiff's second amended complaint must be dismissed for lack of subject matter jurisdiction.

In his opposition, plaintiff argues that his arrest, conviction, and incarceration put him at a disadvantage because he is closed off from the public and is constantly being moved from one facility to another. Dkt. No. 50 at 2. Broadly construed, the Court understands this argument to be a claim by plaintiff that, because of his incarcerated status, he is entitled to the favorable legal presumption that one or more of his March 2023 mailings were *received* by DHS in satisfaction of the "presentment requirement."

This argument implicates a pair of distinct-but-identical-sounding legal doctrines. The first is the "mailbox rule." The mailbox rule "is a rebuttable, common-law presumption that a piece of mail, properly addressed and mailed in accordance with regular office procedures, has been received by the addressee." *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). This presumption was incorporated when the Second Circuit borrowed from state common law. *See Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004) (citing *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985)).

The second is the "prison mailbox rule." The prison mailbox rule creates an "exception" to certain filing deadlines when the plaintiff is incarcerated and unrepresented. "Unlike other litigants, the *pro se* prisoner litigant cannot personally ensure receipt of his legal documents by the court clerk." *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). The prison mailbox rule, in the contexts in which it applies, deems a document "filed" as of the date that it was turned over to prison officials for mailing. *Id*. This "exception" is rooted in the Supreme Court's decision in

*Houston v. Lack*, 487 U.S. 266 (1988), which concluded that "administrative concerns" found in the prison context favored a "bright-line rule" that deemed the prisoner's notice of appeal filed when it was "delivered to the prison authorities for forwarding to the court clerk." *Id*. at 275–76.

The distinction between these two mailbox rules requires discussion because the Second Circuit's case law appears to treat them differently in the FTCA context. First, in 1999, in a case called *Tapia-Ortiz v. Doe*, a panel of the Second Circuit held that the prison mailbox rule applies "to an FTCA administrative filing." 171 F.3d 150 (2d Cir. 1999). But later, in 2019, in a case called *Cooke v. United States*, a different panel of the Second Circuit held that the common-law mailbox rule "is inapplicable to claims brought under the FTCA." 918 F.3d 77 (2d Cir. 2019).

There are a couple ways to reconcile *Tapia-Ortiz* and *Cooke*. The first is to conclude that the two circuit opinions dealt with distinct "mailbox rules" and therefore have nothing to do with each other. Under that reading, prisoner-plaintiffs are still fully entitled to take advantage of the prison mailbox rule for FTCA administrative filings for any purpose despite *Cooke*'s contrary holding and cautionary instruction that exceptions to sovereign immunity must be strictly construed in favor of the sovereign. At least one district court in our circuit has taken that approach, finding it noteworthy that *Cooke* did not discuss or cite *Tapia-Ortiz*. *See Schulte v. United States*, 2024 WL 708196, at *3 (S.D.N.Y. Feb. 21, 2024) (observing "tension between the Second Circuit's analysis in *Tapia-Ortiz* and its later analysis in *Cooke*" but concluding *Tapia-Ortiz* remained good law).

A closer reading of the two cases can probably resolve the tension. To start, *Tapia-Ortiz* is about the FTCA's two-year limitations period. In applying the prison mailbox rule to save the *pro se* prisoner-plaintiff's FTCA claim (which had been received by the agency literally one day too late), the *Tapia-Ortiz* panel reasoned that, "with regard to the difficulties inherent in being a

*pro se* prisoner litigant," there was "no difference between the filing of a court action and the filing of an administrative action." *Id*. at 152.

Notably, however, in reaching that conclusion, the panel readily acknowledged that "[the Supreme Court's decision in *Houston v. Lack*, from which the prison mailbox rule originated] does not apply. . . when there is a specific statutory regime to the contrary." *Tapia-Ortiz*, 171 F.3d at 152 n.1. That observation matters in this situation because *Cooke* implicates a different aspect of the FTCA's "statutory regime."

Unlike *Tapia-Ortiz*, which dealt with the limitations period in 28 U.S.C. § 2401(b), *Cooke* examined the presentment requirement in 28 U.S.C. § 2675. These requirements are related, but they remain distinct.[5] *Hardie v. United States*, 2018 WL 5268112, at *2 (E.D.N.Y. Oct. 23, 2018) (distinguishing between the limitations period and presentment requirement). As relevant here, *Cooke* held that "the mere mailing of a notice of claim does not satisfy the FTCA's presentment requirement" because "[t]he statute and corresponding regulation make clear that actual receipt is required." 918 F.3d at 82.

The issue in this case is about the FTCA's presentment requirement, not the limitations period. So *Cooke* controls. But even if *Tapia-Ortiz* were understood to create an exception to the FTCA's presentment requirement for *pro se* prisoner-litigants, the prison mailbox rule would not apply in this case for an independent reason: an incarcerated *pro se* plaintiff who delivers a document to someone outside the prison system for mailing is not entitled to claim its benefit. *See Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001).

---

[5] The Seventh Circuit has apparently rejected the idea that this distinction can make a difference. *Censke v. United States*, 947 F.3d 488, 492 (7th Cir. 2020) (rejecting argument "the prison-mailbox rule cannot apply when a statute or regulation defines when a complaint is considered filed"). But that precedent does not control the outcome in this case.

The best evidence in the record to show that the unsigned Standard Form 95 was actually ever mailed to DHS is the March 12, 2023 cover letter from plaintiff's criminal counsel, which included a certified mail receipt. Dkt. No. 50 at 8. But because plaintiff's criminal counsel is someone who was outside the prison system, the prison mailbox rule (and *Tapia-Ortiz*) cannot apply to this mailing, which fails to establish "actual receipt" (required by *Cooke*). Accordingly, plaintiff's second amended complaint must be dismissed for lack of subject matter jurisdiction.

Even assuming otherwise, *Tapia-Ortiz*'s plaintiff-friendly prison mailbox rule does not save plaintiff's second amended complaint from dismissal. The "presentment requirement" is satisfied:

> when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an **executed Standard Form 95** or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; **and the title or legal capacity of the person signing**, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a) (emphases added). In other words, an "executed" Standard Form 95 must be "sign[ed]," either by the claimant himself or by the claimant's duly authorized agent. *Id*.

Plaintiff has not produced a signed Standard Form 95, or any other signed notification of the incident. Instead, the written notification on which plaintiff has relied is the "*unsigned* Form 95" that is dated March 13, 2023. Dkt. No. 50 at 2 (emphasis added). This unsigned Standard Form 95 is attached to the second amended complaint. Dkt. No. 10 at 7. Multiple courts have held that the FTCA's presentment requirement is not satisfied where, as here, the only written notification offered by the plaintiff is an unsigned or unexecuted Standard Form 95. *See Levine v. United States*, 2016 WL 3360663, at *4 (D.N.J. June 8, 2016) (holding that 28 C.F.R. § 14.2's

presentment requirement was not satisfied where SF-95 was "not signed or dated"); *Acheampong v. United States*, 2002 WL 32130108, at *2 (E.D. Pa. Oct. 16, 2002) ("The copy of an unsigned SF-95, standing alone, is legally insufficient proof of the [agency's] alleged receipt of [the plaintiff's] FTCA claim.").

This outcome might seem harsh. But courts must "strictly construe matters concerning the waiver of sovereign immunity in favor of the government," *Cooke*, 918 F.3d at 80, and the presentment requirement "applies equally to litigants with counsel and to those proceeding *pro se*." *Adeleke*, 355 F.3d at 153.

Although courts make special efforts to prevent *pro se* litigants from the "inadvertent forfeiture of important rights because of their lack of legal training," *Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021) (cleaned up), there is no legal training needed to understand what it took to "execute" a Standard Form 95, which contains a set of clear, simple instructions about how to properly fill out the document.

As the Seventh Circuit has explained, "there is a difference between generously construing a *pro se* complaint and effectively excusing a *pro se* plaintiff from the statutorily mandated exhaustion requirement." *Chronis v. United States*, 932 F.3d 544, 548 (7th Cir. 2019) (footnote omitted). Accordingly, plaintiff's second amended complaint must be dismissed for lack of subject matter jurisdiction.

V. **CONCLUSION**

Plaintiff has failed to establish that he exhausted his administrative remedies before filing this FTCA action. Although the Court cannot exercise jurisdiction over plaintiff's lawsuit at this time, it might still be possible for plaintiff to properly exhaust his administrative remedies and, if necessary, to return to federal court. Under 28 U.S.C. § 2679(d)(5), the statute appears to give a

claimant whose suit is dismissed on presentment grounds a sixty-day period in which to attempt to comply with the statute and regulation.[6]

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss plaintiff's second amended complaint for lack of subject matter jurisdiction (Dkt. No. 45) is GRANTED;  and

2. Plaintiff's second amended complaint (Dkt. No. 15) is DISMISSED without prejudice.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

Dated: November 24, 2025
       Utica, New York

Anthony J. Brindisi
U.S. District Judge

---

[6] Even if the § 2401(b) statute of limitations expired before the March 2023 filings, "it is still possible, though it is more difficult, to remedy the mistake: the plaintiff can assert an administrative claim, and if the agency denies it, [he] can sue again and ask the court to equitably toll the statutory clock." *Chronis*, 932 F.3d at 549 (collecting cases).